Mary Ann WONGITTILIN, for herself and as personal representative of the Estate of Lenora J. Wongittilin, and Mabelene Wongittilin, Appellants,

v.

STATE of Alaska, et al., and the City of Savoonga, Appellees.

No. S–9251.

Supreme Court of Alaska.

Dec. 7, 2001.

---

30. *Id.*

31. *Id.*

32. *Id.*

Ted Stepovich, Stepovich, Kennelly & Stepovich, Anchorage, for Appellants.

Stephanie Galbraith Moore, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska; Jennifer M. Coughlin, Preston Gates & Ellis, Anchorage, for Appellee City of Savoonga.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

While driving intoxicated in Savoonga on the evening of December 28, 1996, Howard Jackson struck and killed twelve-year-old Lenora Wongittilin. The police had had an outstanding warrant for Jackson's arrest since August 5, 1996. Wongittilin's personal representative sued the State of Alaska and City of Savoonga for negligent failure to arrest Jackson. The superior court granted summary judgment to the defendants on the grounds that they owed no duty to Wongittilin. The personal representative appeals. We affirm the judgment of the superior court because this case falls within the class of cases in which we have previously held that the government has no duty to the plaintiff that is cognizable in a civil tort suit.

## II. FACTS AND PROCEEDINGS

Howard Jackson has a criminal history consisting primarily of assaults, weapons offenses, and alcohol-related crimes. On or about January 19, 1996, Jackson was charged in Nome with various offenses related to sexual assault and domestic violence. He pled no contest to three misdemeanor charges, and the remaining charges were dismissed. The magistrate sentenced Jackson to 290 days imprisonment with 160 days

suspended and gave him two years probation. The magistrate allowed Jackson's release for subsistence hunting activities, provided that Jackson committed no further crimes, drank no alcohol, and surrendered himself to custody in Nome by June 30, 1996.

Around May 1 Jackson attempted suicide by shooting himself in the chest. Jackson did not surrender himself to custody by June 30, and the magistrate issued a warrant for his arrest. The state troopers received the warrant on August 5.

On September 25 Trooper Johnston traveled to Savoonga and met with Jackson at the city hall. They discussed Jackson's suicide attempt. Jackson stated that he was sober at the time of his suicide attempt, had been to counseling since the attempt, and had no more serious thoughts of suicide. Johnston did not arrest Jackson on the outstanding warrant because he believed the return flight to Nome was full. Court Service Officer Holly corroborated Johnston's belief.

On at least one occasion in late November, Jackson got drunk and was recklessly firing a shotgun, according to the allegations of three Savoonga residents. Neither Trooper Johnston nor Officer Holly recalled any reports of problems caused by Jackson before December 28.

On the evening of December 28, Jackson drank excessively and drove his four-wheeler at high speed through Savoonga. Jackson struck and killed Lenora Wongittilin.

Wongittilin's personal representative sued the State of Alaska and the City of Savoonga for negligent failure to arrest Jackson. The state moved for summary judgment, arguing that the mandatory-arrest domestic-violence statute, AS 18.65.530, does not permit a civil action for alleged failure to arrest; that the state had no actionable duty to arrest Jackson; and that the state was immune from liability under the discretionary function exception of AS 09.50.250. The City of Savoon-

ga joined the motion without additional briefing.

Superior Court Judge Ben Esch granted the state's motion. First, the court ruled that the mandatory-arrest domestic-violence statute did not apply because Jackson was conditionally released on April 11, 1996, before AS 12.30.027 and AS 18.65.530 became effective on July 1.[1] Neither party appeals this ruling.

Second, the court concluded that the determination of duty was covered by *Waskey v. Municipality of Anchorage.*[2] The court explained that *Waskey* rejected the imposition of a duty on the police to conduct criminal investigations non-negligently and that the present case presented a similar situation where imposition of a tort duty would improperly infringe upon police discretion.

Third, the court concluded that even if a duty existed, discretionary immunity under AS 09.50.250 barred the action. The court interpreted the permissive language of AS 18.65.080, which states that the police "may" execute warrants, to encompass a discretionary function that was therefore immune.

Fourth, the superior court concluded that there was no special relationship between the police and Jackson based on Restatement (Second) of Torts § 315 (1965). The court decided that because Jackson's probation did not include active supervision, "much of the rationale for finding a special relationship [was] lost.... [T]here was no increased ability to foresee Jackson's danger."

Wongittilin appeals the superior court decisions that no duty exists, that immunity applies, and that no special relationship existed.

## III. STANDARD OF REVIEW

■ We review a grant of summary judgment *de novo.*[3] All reasonable factual inferences are drawn in favor of the non-moving party "to determine whether genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law."[4] In reviewing questions of law, we

---

**1.** *See* ch. 64, § 83, SLA 1996.

**2.** 909 P.2d 342 (Alaska 1996).

**3.** *See Brady v. State,* 965 P.2d 1, 8 (Alaska 1998).

**4.** *United Airlines, Inc. v. Good Taste, Inc.,* 982 P.2d 1259, 1262 (Alaska 1999) (citing *West v. City of St. Paul,* 936 P.2d 136, 138 (Alaska 1997)).

apply our independent judgment and adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[5]

## IV. DISCUSSION

### A. The Police Did Not Owe Wongittilin a Duty to Arrest Jackson on an Existing Warrant.

 Actionable duty is a question of law and public policy: "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."[6] To determine whether actionable duty exists, we first look for a duty imposed by statute.[7] If none exists, we then determine if the current case falls in the class of cases controlled by existing precedent.[8] If no closely related case law exists, we weigh the public policy considerations enumerated in *D.S.W. v. Fairbanks North Star Borough School District.*[9] "The 'precise nature and extent' of a duty 'is a question of law which can be decided at the summary judgment stage.' "[10]

### 1. The police have no statutory duty to arrest.

 Wongittilin argues that the combination of the language of the warrant and AS 18.65.090[11] establishes a statutory duty to arrest. The bench warrant states, "To Any Peace Officer Or Other Authorized Person: You are commanded to arrest the defendant and bring the defendant before the nearest available judicial officer without unnecessary delay...." Alaska Statute 18.65.090 provides that the Alaska Department of Public Safety "shall assist" other governmental departments. Wongittilin argues that the police, as members of the Department of Public Safety, have a duty to assist other governmental departments, including the judicial branch of government. When the court commands the police to arrest, Wongittilin reasons, the duty to assist the judiciary becomes a duty to execute the arrest warrant.

The state contends that while AS 18.65.080[12] specifies the authorities and duties of the state troopers, it does not impose a duty to execute warrants. The state contends further that, to the extent that AS 18.65.080 and .090 conflict, the more specific, section .080, should control.

We agree that AS 18.65.080 does not impose a duty on the police to execute warrants. Alaska Statute 18.65.080, entitled "Powers and duties of department and members of state troopers,"[13] specifically covers police duties. It provides that state troopers "may ... execute any lawful warrant or or-

5. *See State, Dep't of Transp. and Pub. Facilities v. Sanders,* 944 P.2d 453, 456 (Alaska 1997) (citing *Great Am. Ins. Co. v. Bar Club, Inc.,* 921 P.2d 626, 627 (Alaska 1996)).

6. *Mesiar v. Heckman,* 964 P.2d 445, 448 (Alaska 1998) (quoting William L. Prosser, THE LAW OF TORTS § 53, at 325 (4th ed.1971)).

7. *See Estate of Day v. Willis,* 897 P.2d 78, 81 (Alaska 1995).

8. *See City of Kotzebue v. McLean,* 702 P.2d 1309, 1314 (Alaska 1985).

9. 628 P.2d 554, 555 (Alaska 1981); *see also Waskey v. Municipality of Anchorage,* 909 P.2d 342, 343–44 (Alaska 1996).

10. *Smith v. State,* 921 P.2d 632, 634 (Alaska 1996) (quoting *Mulvihill v. Union Oil Co.,* 859 P.2d 1310, 1314 n. 4 (Alaska 1993)).

11. AS 18.65.090 is a general statement of interdepartmental assistance: "The Department of Public Safety shall assist other departments of the state, municipal, and federal governments in the enforcement of criminal laws and regulations pertaining to those departments."

12. AS 18.65.080 specifies the powers and duties of the state troopers:

> The Department of Public Safety and each member of the state troopers is charged with the enforcement of all criminal laws of the state, and has the power of a peace officer of the state or a municipality and those powers usually and customarily exercised by peace officers. Each member of the state troopers may prevent crime, pursue and apprehend offenders, obtain legal evidence, institute criminal proceedings, execute any lawful warrant or order of arrest, make an arrest without warrant for a violation of law committed in the presence of the state trooper, and may cooperate with other law enforcement agencies in detecting crime, apprehending criminals, and preserving law and order in the state.

13. *Id.*

der of arrest." [14] The word "may" in a statute "affords the [police] officer ... permissive authority, not an obligatory duty." [15] Because section .080 uses the permissive "may," it does not create a duty to arrest on an outstanding warrant.

Alaska Statute 18.65.090 does not conflict with AS 18.65.080. The purpose of section .090 is to require cooperation between governmental departments to enforce the law. Alaska Statute 18.65.090 imposes a duty on the police to assist other governmental departments but not a general duty to protect the public.[16] Thus, neither statute establishes a police duty to execute outstanding warrants.

■ Wongittilin also argues that Alaska Criminal Rule 4 [17] imposes on the police a duty to arrest when a warrant is issued. We disagree.

Alaska Criminal Rule 4 cannot impose a duty to arrest on the police. While the rule does use the mandatory language "shall," imposing a tort duty on the police is beyond the scope of the Criminal Rules of Procedure. The scope of the Criminal Rules is limited to "govern[ing] the practice and procedure in the superior court in all criminal proceedings." [18] Moreover, the context of Rule 4(c)(1) indicates that the rule's purpose is to define authority—not to impose a duty—to execute warrants and to serve civil summons. Rule 4 allows any peace officer or any other authorized person to serve a summons but allows only the police or other authorized officers to execute a warrant. Thus, Alaska Criminal Rule 4 does not impose a duty to arrest.

**2. This case is within the class of cases previously decided that find no duty to execute a warrant and no duty to conduct a criminal investigation without negligence.**

■ Wongittilin argues that this case is in the class of cases defined by *Division of Corrections v. Neakok*,[19] and thus a duty exists. Conversely, the state argues that the superior court correctly concluded that no duty existed according to *Waskey v. Municipality of Anchorage*.[20] We conclude that *Neakok* does not apply, and that *Waskey* and the recently decided *Dore v. City of Fairbanks*[21] describe a class of cases that encompasses this case.

In *Neakok*, Clifford Nukapigak, who had a history of violence while intoxicated, was convicted of assault and rape and sentenced to six years imprisonment.[22] After he was paroled without any special condition prohibiting him from drinking alcohol, Nukapigak drank heavily and murdered his stepdaughter, her boyfriend, and another woman.[23] Neakok, as personal representative of the deceased, sued the state for negligence.[24] We held that "state corrections personnel have the duty to use due care in supervising parolees and in protecting the foreseeable victims of parolees they know, or reasonably

14. *Id.*

15. *Posey v. State*, 180 Cal.App.3d 836, 225 Cal. Rptr. 830, 839 (1986) (interpreting statute providing that police "may" remove car from road when it creates hazard as granting discretionary authority and not imposing duty).

16. Because the purpose of AS 18.65.090 is to foster cooperation between various governmental agencies and not to protect the public from criminals with outstanding warrants, Wongittilin cannot derive an actionable duty from section .090. *See Lundquist v. Dep't of Pub. Safety*, 674 P.2d 780, 782–85 (Alaska 1983).

17. Alaska R.Crim. P. 4(c) indicates by whom and in what manner a warrant must be executed:
(c) Execution or Service and Return.
(1) By Whom. The warrant shall be executed by any peace officer or other officer authorized by law. The summons may be served by any peace officer or by any other person authorized to serve a summons in a civil action.
. . . .
(3) Manner. The warrant shall be executed by the arrest of the defendant.

18. Alaska R.Crim. P. 1.

19. 721 P.2d 1121 (Alaska 1986).

20. 909 P.2d 342 (Alaska 1996).

21. 31 P.3d 788 (Alaska 2001).

22. *See Neakok*, 721 P.2d at 1123.

23. *See id.* at 1123–24.

24. *See id.*

should know, to be dangerous."[25] We particularly noted that a special relationship existed between Nukapigak and the state because of Nukapigak's status as a parolee and the close observation during more than four years of incarceration that led prison counselors to conclude that Nukapigak presented a danger to society if he resumed drinking.[26]

This case is not controlled by *Neakok.* In *Neakok,* Nukapigak was on supervised release.[27] The court assigned him a parole officer.[28] Here, Jackson was released without any provision for active supervision. Also, in *Neakok,* Nukapigak was imprisoned for more than four years, during which time he was observed by prison counselors who determined he might be dangerous if he resumed drinking alcohol.[29] Jackson served only twenty-three days, and the record contains no evidence of observation or counseling during that time. The relationship between Nukapigak and the state is sufficiently different from the relationship between Jackson and the state that this case is not in the same class as *Neakok.* Accordingly, *Neakok* does not control this case.

To the extent that Wongittilin premises the existence of duty on a special relationship between the police and Jackson, the analysis of our recent decision in *Dore v. City of Fairbanks* applies. In *Dore,* an estranged husband, who had previously made threats to kill his spouse, murdered her seven days after a warrant for his arrest was issued because he had harassed her.[30] We concluded that the police had no duty in that situation because no duty was imposed by statute, the facts did not indicate imminent harm as in *City of Kotzebue v. McLean,*[31] and the Restatement framework indicated no duty to control the husband as a dangerous third party.[32]

In concluding that the state had no duty, we noted the general rule stated in Restatement § 315:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.[33]

We concluded that no special relationship existed between the husband and the police because the police never "took charge" of him as required by Restatement of Torts § 319 for a special relationship between a defendant and a dangerous third party.[34] Given this lack of a special relationship in *Dore,* we concluded that the police had no tort duty to arrest.[35]

Similarly, in the instant case, no special relationship under Restatement § 319 exists because the police never took charge of Jackson. Restatement § 319 states that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."[36] While the police did question Jackson at the city hall, Trooper Johnston did not execute the outstanding arrest warrant on Jackson for logistical reasons. Therefore, Johnston never took charge of Jackson, and no special relationship existed under Restatement § 319.

**25.** *Id.* at 1130.

**26.** *See id.* at 1126.

**27.** *See id.* at 1123.

**28.** *See id.*

**29.** *See id.* at 1126.

**30.** 31 P.3d at 789.

**31.** 702 P.2d 1309 (Alaska 1985).

**32.** *See Dore,* 31 P.3d at 796.

**33.** RESTATEMENT (SECOND) OF TORTS § 315 (1965). The Restatement further defines § 315(a) special relationships in §§ 316–19 and § 315(b) special relationships in §§ 314A & 320. *See* RESTATEMENT (SECOND) OF TORTS § 315 cmt. c (1965).

**34.** *See Dore,* 31 P.3d at 794.

**35.** *See id.*

**36.** RESTATEMENT (SECOND) OF TORTS § 319.

The superior court held that this case was in the class of cases covered by *Waskey v. Municipality of Anchorage*.[37] Wongittilin argues that *Waskey* is distinguishable on its facts because the instant case does not concern negligent investigation but rather a failure to execute a warrant. The state reads *Waskey* more broadly and argues that *Waskey* controls because both cases involve claims of negligence in criminal investigation.

In *Waskey*, we "refused to recognize a tort of negligent investigation of a crime."[38] Evan Waskey was arrested for assault. He gave his brother's name, John, to the arresting officer, and Evan was released on bail. When Evan failed to appear, a warrant issued for John Waskey, and the police arrested John instead of Evan. John sued the city for negligence. We held that "[t]he arresting officer owed John no duty of care to proceed without error when he initiated legal action against Evan. Because the arresting officer owed John no duty of care, no duty was breached...."[39]

To the extent that Wongittilin argues that the police have a general duty to execute warrants without negligence, *Waskey* controls this case. In both cases, alleged police negligence in arresting a suspect resulted in injury to an innocent third party. In *Waskey*, the police's alleged negligence in attempting to arrest Evan led to John's wrongful arrest. Here, the police's alleged negligence in failing to arrest Jackson led to Wongittilin's death. Absent some sort of special relationship as discussed above, the police have no general duty to execute a warrant.[40]

Admittedly, *Waskey* involved affirmative police conduct whereas the instant case involves a failure to act. We reasoned that there was no duty to John Waskey in part because we did not want to overly burden the police with liability for instituting legal action while performing their duties in good faith. *Waskey* expressly relied upon the analysis of the *D.S.W.* factors in *Stephens v. State, Department of Revenue*.[41] In *Stephens*, we discussed in detail the factor of the burden on the defendant and consequences to the community and decided that imposing liability for negligently brought lawsuits would be too severe.[42] *Stephens* based its reasoning on the desire to protect affirmative police conduct initiating legal action.[43]

While this specific reason of protecting police initiation of legal action is not present here, the more general concern of burden on the police and consequences to the community is still present. Imposing a duty to execute a warrant would allow claims in all cases where a person with an outstanding warrant injures another. It would also impose liability in those cases where police failure to execute the warrant was determined, with twenty-twenty hindsight, to have been negligent. "Such a decision would invariably lead to the diversion of resources from other projects and investigations. Decisions regarding the allocation of limited resources are better left to the executive branch."[44] Plus, the decision of when to execute an arrest warrant is a fundamental aspect of police discretion. Imposing a duty to execute warrants will unnecessarily constrain the discretion that the police need in making the "quick and important decisions that characterize a criminal investigation."[45] Because

---

37. 909 P.2d 342 (Alaska 1996).

38. *Id.* at 344.

39. *Id.*

40. *Cf. Dore v. City of Fairbanks*, 31 P.3d 788 (Alaska 2001) *with Division of Corrections v. Neakok*, 721 P.2d 1121 (Alaska 1986); *see* RESTATEMENT (SECOND) OF TORTS § 315 (1965).

41. 746 P.2d 908 (Alaska 1987).

42. *See id.* at 911.

43. *See id.* ("The law supports the use of litigation as a social means for resolving disputes, and

it encourages honest citizens to bring criminals to justice. Consequently, *the accuser must be given a large degree of freedom to make mistakes and misjudgments without being subjected to liability* ...." (alteration in original) (quoting W. Keeton & W. Prosser, THE LAW OF TORTS § 119, at 871)).

44. *Hawks v. State, Dep't of Pub. Safety*, 908 P.2d 1013, 1017 (Alaska 1995).

45. *See Wongittilin v. Jackson, et al.*, No. 2NO–98–54 Ci. (Alaska Super., April 23, 1999) (internal quotation marks omitted) (citing *Smith v. State*, 324 N.W.2d 299, 301 (Iowa 1982)).

imposing a general duty to execute warrants burdens the police as much as imposing a duty to initiate investigations without negligence, this alternate rationale supports a broad reading of *Waskey* to include the instant case.

We conclude that the police had no duty cognizable in a civil tort suit to arrest Jackson as this case falls within the class of cases described by *Waskey* and *Dore*. Because we hold that the police had no duty to arrest Jackson based on our existing case law, we need not perform a *D.S.W.* factor analysis or reach the question of whether the discretionary function immunity applies.

**B. The Superior Court Properly Granted Summary Judgment to the City of Savoonga Because the Analysis of Duty Applied Equally to State and City.**

Whether the state or the city is the defendant does not substantially affect the duty analysis in this case. The statutory duty analysis is the same.[46] Our case law, *Waskey* and *Dore*, likewise applies similarly to the state and city. Because the superior court properly determined that the state had no duty under statute or case law, the city likewise had no duty in this case.

## V. CONCLUSION

Because no statutory duty exists and this case is in the class of cases defined by *Waskey* and *Dore*, the police had no tort duty to execute the warrant in this case. Accordingly, we AFFIRM the judgment of the superior court.

---

**46.** Wongittilin has not identified any police officer employed by the City of Savoonga or established under which statute such officer may have had a duty. Alaska Statute 18.65.010, which pertains to "special officers," may apply in this case. Alaska Statute 18.65.670, which creates the "village public safety officer program," may also apply. The former is analogous to AS 18.65.080, analyzed above at Part IV.A.1, in establishing permissive authority, but no duty, to execute warrants. *Cf.* AS 18.65.080 ("Each member of the state troopers may ... execute any lawful warrant or order of arrest ....") *with* AS 18.65.010(b) ("Each person appointed as a special officer under this section may ... execute warrants of arrest ... issuing from any court of the state. A special officer may make arrests in the same manner as a member of the division of state troopers."). The latter does not address the subjects of authority or duty to arrest at all.