Johnny McGREW and Mary
McGrew, Appellants,

v.

STATE of Alaska, DEPARTMENT OF
HEALTH AND SOCIAL SERVICES,
DIVISION OF FAMILY AND YOUTH
SERVICES, Appellee.

No. S–10699.

Supreme Court of Alaska.

Feb. 4, 2005.

James Alan Wendt, Law Offices of James Alan Wendt, Anchorage, for Appellants.

Gail T. Voigtlander, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Grandparents of an orphaned child sued the State of Alaska, claiming that it prevented them from adequately litigating their interests in child-in-need-of-aid (CINA) and adoption proceedings relating to their grandchild. We consider here whether it was error to grant the state's Alaska Civil Rule 12(b)(6) motion to dismiss their claims of negligence, intentional infliction of emotional distress (IIED), and violation of constitutional rights. We affirm the dismissal of their negligence claim, because the state owed them no actionable duty. We also affirm the dismissal of their constitutional claim, because they had alternative litigation remedies available. But because their complaint adequately pleaded an IIED claim, we reverse the Rule 12(b)(6) dismissal of that claim and remand.

## II. FACTS AND PROCEEDINGS

The Alaska Division of Family and Youth Services (DFYS) took emergency custody of Johnny and Mary McGrews' infant granddaughter, Lucy M.,[1] after the sudden deaths of the infant's parents and twin sibling in July 1999. According to the McGrews, Lucy's father shot and killed Lucy's mother, and then shot and killed himself. Lucy's

---

1. Pseudonyms have been used for all persons other than the appellants.

twin sister died when Lucy's mother fell on the infant and smothered her. DFYS filed a petition for an adjudication that Lucy was a child in need of aid under AS 47.10.011. The superior court granted DFYS's petition and placed Lucy with Elsa C., who had been a friend of Lucy's mother and a babysitter for Lucy and her twin sister. In September 1999 the McGrews filed a motion to intervene in the CINA proceedings. In November 1999 Elsa and her husband, Dillon C., also moved to intervene in the CINA proceedings. The superior court granted both intervention motions. After conducting a hearing in February 2000, the superior court released Lucy from DFYS's custody and continued Lucy's pre-adoptive placement with the C. family.

In August 2001 Johnny and Mary McGrew filed a tort complaint against the Alaska Department of Health and Social Services, Division of Family and Youth Services. We refer to the defendants as the "state" or "DFYS." The complaint alleged that Mary McGrew had notified DFYS that she was a licensed foster care provider and that she and her husband, and other family members, were willing to take custody of Lucy. The complaint alleged that DFYS refused to provide the McGrews with any information about their granddaughter's placement, and that any information DFYS provided was "false and misleading."

The complaint alleged that even though DFYS had been advised that the McGrews were interested in obtaining custody of Lucy, DFYS appeared ex parte at Lucy's CINA hearing and failed to inform the court of the McGrews' interest in caring for their granddaughter. The complaint also alleged that DFYS failed to notify the court that one of the adults with whom Lucy had been placed, Dillon C., had a criminal history. The complaint alleged that in placing Lucy, DFYS failed to abide by applicable statutes, rules, and its own policies and procedures.

The McGrews' complaint asserted three claims. Count I asserted a negligence claim for DFYS's alleged failure to abide by its own policies in placing Lucy. Count II assert-ed a "*Bivens* action" [2] for alleged failures to abide by the Alaska Constitution, applicable Alaska Statutes, the Alaska Administrative Code, and DFYS's internal policies. Count III asserted an IIED claim. The complaint sought compensatory damages, pre- and post-judgment interest, costs, and attorney's fees.

The state moved under Alaska Civil Rule 12(b)(6) to dismiss the entire action, arguing that the complaint failed to state legally cognizable claims.

The McGrews opposed the motion to dismiss, arguing that DFYS owed them an actionable duty and that no alternate remedies were available for purposes of the *Bivens* action. They asked for leave to amend their complaint under Alaska Civil Rule 15(a) if the court found the state's arguments persuasive.

The McGrews also moved in the superior court to supplement the record. The order denying their motion to supplement stated that "the issue of duty raised by the motion [to dismiss] is a legal issue, not a fact based inquiry.... As there is no need to consider factual issues, there is no need to allow [supplementation] of the record."

After hearing oral argument, the superior court granted the state's motion to dismiss the IIED and negligence claims, ruling that the state only owed a duty to the child in need of aid, and did not owe a duty to the child's relatives, such as parents and grandparents. The court also declined to allow a *Bivens* remedy in this case.

The McGrews moved for reconsideration under Alaska Civil Rule 77(k). The superior court denied this motion and entered final judgment for the state. The McGrews appeal the dismissal of their complaint and the denial of their motion to supplement the record.

The McGrews were also parties to another appeal challenging the superior court's dismissal of their adoption petition and the award of custody of Lucy to Elsa and Dillon

---

2. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

C.[3] In *In re Adoption of L.E.K.M.*, decided after the superior court dismissed the tort claims in the present case, we affirmed the superior court's placement of Lucy with the C. family.[4]

## III. DISCUSSION

### A. Standard of Review

Alaska Civil Rule 12(b)(6) allows the dismissal of a complaint for "failure to state a claim upon which relief can be granted." We review the superior court's Rule 12(b)(6) dismissal of the McGrews' complaint de novo,[5] deeming all facts in the complaint "true and provable." [6] To survive a motion to dismiss, a complaint need only allege "a set of facts consistent with and appropriate to some enforceable cause of action." [7] A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.[8]

### B. The Negligence Claim

The McGrews argue that because they were parties in the CINA proceeding, DFYS owed them a duty of care once it made the decision to seek and obtain temporary emergency custody of Lucy. They there-

fore argue that it was error to dismiss their negligence claim.

In deciding whether a defendant owes a plaintiff a duty of reasonable care, we first determine whether a duty is imposed by statute, regulation, contract, undertaking, the parties' preexisting relationship, or existing case law.[9] If these sources do not resolve the issue, we apply the multi-factor approach discussed in *D.S.W. v. Fairbanks North Star Borough School District*[10] to determine whether an actionable duty of care exists.[11]

The McGrews argue that an actionable duty is imposed by AS 47.14.240, which specifies the responsibilities of the local review boards which review DFYS's placement decisions. It requires a review board to allow the child's relatives to participate.[12] But another statute, AS 47.10.960, states that "[n]othing in this title creates a duty or standard of care for services to children and their families being served under AS 47.10." Lucy was a child "being served under AS 47.10." Section .960 therefore precludes the McGrews from contending in a tort suit that AS 47.14.240 can be the basis of an actionable duty.

The McGrews also assert that other statutes are sources of an actionable duty: AS

---

3. *See In re Adoption of L.E.K.M.*, 70 P.3d 1097 (Alaska 2003). That case concerned the private adoption of Lucy after the CINA proceedings ended. *Id.* at 1100.

4. *Id.* at 1099.

5. *Valdez Fisheries Dev. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 664 (Alaska 2002).

6. *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000).

7. *Id.* (internal quotation marks omitted).

8. *Angnabooguk v. State*, 26 P.3d 447, 451 (Alaska 2001).

9. In *Karen L. v. State, Department of Health & Social Services, Division of Family & Youth Services* we stated: "[T]ypical theoretical sources of actionable duties are statutes, regulations, certain contracts, express undertakings, or fiduciary relationships.... If one of those duty sources applied, it would not be necessary to consider the *D.S.W. [v. Fairbanks North Star Borough School District]* factors." 953 P.2d 871, 875 n. 9 (Alaska

1998) (internal citations omitted). *See also Wongittilin v. State*, 36 P.3d 678, 681 (Alaska 2001); *Waskey v. Municipality of Anchorage*, 909 P.2d 342, 343–44 (Alaska 1996) (finding it "unnecessary to resort to the *D.S.W.* approach" where we had decided other cases "more closely related" to the subject duty dispute); *Estate of Day v. Willis*, 897 P.2d 78, 81 n. 7 (Alaska 1995) (holding internal administrative and training manual did not impose duty of care toward fleeing suspects).

10. *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981).

11. *Wongittilin*, 36 P.3d at 681. The *D.S.W.* factors include foreseeability of harm; degree of certainty plaintiff suffered injury; closeness of connection between defendant's conduct and injury; moral blame attached to defendant's conduct; policy of preventing future harm; extent of burden to defendant and availability; cost and prevalence of insurance for the risk involved. *D.S.W.*, 628 P.2d at 555.

12. AS 47.14.240(d)(2).

47.10.142(a), · (e), and (h);[13] · AS 47.10.020(a);[14] AS 47.10.080($l$) and ($l$)(2)(B);[15] ·and AS 47.05.060.[16] Any claim based on these statutes is likewise barred by AS 47.10.960.

In *Karen L. v. State, ·Department of Health & Social Services, Division of Family & Youth Services*, we considered whether a mother could assert tort claims arising from CINA proceedings addressing placement of a child in DFYS custody.[17] The superior court there granted summary judgment to the state, DFYS, state social workers, and the child's guardians ad litem, dismissing all of the mother's claims, including her negligence claims.[18] We held that the state and the social workers did not owe the mother an actionable duty of care.[19] The mother therefore could not maintain negligence claims against the state or its agencies and employees.

We recognize here, as we did in *Karen L.*, that "it is to be expected that any litigation, and certainly a CINA proceeding in which the child is taken from its [relatives] ... will cause the [relatives] some distress. That does not mean that the distress should be actionable."[20] *Karen L.* establishes that DFYS does not owe a parent an actionable duty of reasonable care in a CINA proceeding.[21] *Karen L.* therefore precludes the grandparents' negligence claim in this case.

The McGrews attempt to distinguish *Karen L.* on the theory there was no claim in that case that the state had bad motives. They assert that DFYS here engaged in intentional deceit and "affirmatively misled" them by making false statements about its placement plan for the child. That distinction is potentially pertinent only to the McGrews' claims alleging intentional misconduct. As to the McGrews' negligence claim, *Karen L.* controls.

The McGrews also argue that their case is distinguishable from *Karen L.* because DFYS failed to comply with the statutory requirements of AS 47.14.240, denying them their right to be "meaningfully heard in a timely fashion." They therefore argue that

---

13. AS 47.10.142(a) allows the Department of Health and Social Services to take emergency custody of a child in certain circumstances. Subsection .142(e) provides that when a temporary custody hearing is held, a court shall then determine "whether probable cause exists for believing the child to be a child in need of aid." Subsection .142(h) provides that "[w]ithin 12 months after a child is committed to the department under this section, the court shall review the placement plan and actual placement of the child under AS 47.10.080($l$)."

14. AS 47.10.020(a) provides in pertinent part: Whenever circumstances subject a child to the jurisdiction of the court under AS 47.10.005–47.10.142, the court shall appoint a competent person or agency to make a preliminary inquiry and report for the information of the court to determine whether the best interests of the child require that further·action be taken. If, under this subsection, the court appoints a person or agency to make a preliminary inquiry and to report to it, then, upon the receipt of the report, the court may ... (3) authorize the person or agency having knowledge of the facts of the case to file with the court a petition setting out the facts.

15. AS 47.10.080($l$) provides in pertinent part: Within 12 months after the date a child enters foster care as calculated under AS 47.10.088(f), the court shall hold a permanency hearing. The hearing and permanent plan developed in the hearing are governed by the

following provisions ... (2) when establishing the permanent plan for the child, the court shall make· appropriate written findings, including findings related to whether ... (B) the child should be placed for adoption or legal guardianship and whether a petition for termination of parental rights should be filed by the department....

16. AS 47.05.060 provides in pertinent part:
The purpose of this title as it relates to children is ... to preserve and strengthen the child's family ties unless efforts to preserve and strengthen the ties are likely to result in physical or emotional damage to the child ... and ... to secure for the child adequate custody and care and adequate planning for permanent placement of the child.

17. *Karen L. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Serv.*, 953 P.2d 871, 876 (Alaska 1998) (declining to impose duty of care on state and social workers because it was not reasonably foreseeable that their conduct would · cause Karen L. "actionable emotional harm").

18. *Id.* at 873.

19. *Id.* at 876, 878.

20. *Id.* at 876.

21. *Id.* at 878.

*Karen L.* does not apply to them because the court there held that there was no statute that imposed an actionable tort duty.

But as we saw above, AS 47.10.960 establishes that DFYS owes the McGrews no actionable duty arising out of any provision in Title 47. Therefore, *Karen L.* cannot be distinguished on a theory the McGrews were owed a statutory duty not addressed in *Karen L.*

## C. The *Bivens*-type Claim

A *"Bivens* claim" is the cause of action sometimes permitted in federal courts for a governmental violation of the plaintiff's constitutional rights.[22] We have never decided whether a *Bivens*-like remedy is available for violations of the Alaska Constitution.[23] In *Brown v. Ely* we noted that "federal courts have not permitted the *Bivens* remedy if alternative remedies are available."[24] The McGrews' opportunities to participate as intervenors in the CINA proceeding and to oppose the adoption decree gave them adequate alternative avenues to challenge the litigation conduct of the governmental agency, DFYS. The alleged misconduct occurred during existing judicial proceedings, during which the McGrews had opportunities to seek prompt judicial relief that might have avoided or remedied any harm they allegedly suffered. The availability of judicial remedies in the very proceedings in which the misconduct allegedly took place distinguishes the McGrews' case from federal cases in which grave governmental misconduct has immediate consequences that cannot be readily

avoided or corrected in existing judicial proceedings.[25] We see no reason why the McGrews should have an additional means of challenging, through a tort suit, the alleged unconstitutionality of that conduct.

Furthermore, the McGrews' *Bivens* claims inherently allege misconduct by persons acting for the government. At least in context of this case, the theoretical availability of an IIED claim would be an alternative remedy that obviates any need for a *Bivens* claim. We therefore do not need to approve a *Bivens* remedy here.

## D. The Intentional Infliction of Emotional Distress Claim

The McGrews contend that *Karen L.* does not require dismissal of their claim that DFYS engaged in intentional misconduct. They argue that their allegations of intentional wrongdoing and deceit distinguish *Karen L.*[26] The state simply responds that *Karen L.* bars the "McGrews' claims for negligence and emotional distress."

To plead a claim for IIED, a plaintiff must allege these necessary elements: "(1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe."[27] The McGrews' complaint alleged that DFYS's conduct was "extreme, outrageous and atrocious"; that its conduct was "intentional and/or reckless"; that its conduct "caused emotional distress" to the McGrews; and that their distress was

---

**22.** *See, e.g., Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that Fourth Amendment violation by federal agent acting under color of his authority gave rise to cause of action for damages directly under U.S. Constitution).

**23.** *Brown v. Ely*, 14 P.3d 257, 261 (Alaska 2000) ("We have neither adopted nor rejected the *Bivens* approach with respect to state constitutional violations."); *King v. Alaska State Hous. Auth.*, 633 P.2d 256, 261 (Alaska 1981).

**24.** *Brown v. Ely*, 14 P.3d 257, 261 (Alaska 2000); *Thoma v. Hickel*, 947 P.2d 816, 824 (Alaska 1997); *Dick Fischer Dev. No. 2, Inc. v. Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992) ("We are also hesitant to extend the *Bivens* decision, and will not allow a claim for damages except in

cases of flagrant constitutional violations where little or no alternative remedies are available.").

**25.** *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73–74, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (refusing to extend *Bivens* action to plaintiff "whose lack of alternative tort remedies was due solely to strategic choice").

**26.** They also argue that their allegations of intentional wrongdoing and deceit satisfy the *D.S.W.* factors. But those factors pertain only to torts involving negligent, not intentional, acts. *See infra.*

**27.** *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 589 (Alaska 2001).

"severe" and that they "suffered personal injury, personal humiliation, mental anguish, pain and suffering." Their complaint therefore adequately pleaded all necessary elements of an IIED claim.

 IIED claims require the trial court to make a "threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim." [28] We review this threshold determination for abuse of discretion,[29] but there was no threshold determination in this case about whether the state's alleged conduct was sufficiently outrageous or whether the McGrews' alleged emotional distress was sufficiently severe for an IIED claim. Instead, the Rule 12(b)(6) dismissal of the IIED claim seems to have been based on a conclusion that *Karen L.'s* discussion of duty also controls IIED claims against DFYS. We review that conclusion de novo because it presents an issue of law.[30]

In *Karen L.* we considered the "narrow question" whether the state defendants owed Karen "a duty of care to protect her from emotional distress with respect to the CINA proceeding." [31] We have usually discussed the element of "duty of care" in context of negligence claims, not intentional tort claims. For example, in *Chizmar v. Mackie,* we stated that "a plaintiff's right to recover emotional damages caused by mere negligence should be limited to those cases where the defendant owes the plaintiff a preexisting duty." [32] We noted in *Hawks v. State, Department of Public Safety* that the first step in determining whether a negligence action can be maintained is determining whether the defendant owed the plaintiff a duty of care.[33] Our discussion in *Karen L.* of a duty

of care and the *D.S.W.* factors pertained only to Karen L.'s negligence claims against the state and its agencies and employees.[34] That discussion does not control the McGrews' IIED claims here.

We discussed separately in *Karen L.* the mother's IIED claims against the state defendants. The superior court had dismissed the mother's IIED claims on summary judgment.[35] We affirmed, holding that "Karen did not make the necessary threshold showing on the conduct element for an IIED claim, and the record requires the conclusion that the conduct of the social worker defendants was neither outrageous nor extreme." [36] But the McGrews' IIED claim was dismissed on the pleadings, not summary judgment, and as we noted above, the McGrews' complaint sufficiently pleaded an IIED claim. The superior court here consequently never had to decide whether their case met the thresholds for an IIED claim.

Moreover, we discussed duty in *Karen L.* and *D.S.W.* in context of claims in which the existence of an actionable duty of care was legally and factually problematic. The legal determination whether there is an actionable duty of care has little if any conceptual relevance to an IIED claim. The concept of a "duty of care" is usually identified with negligence claims,[37] and has no obvious bearing on a claim of intentional and outrageous conduct; the intentionality of the outrageous conduct needed for an IIED claim presupposes at least some intended relationship between the actor and the person harmed. The *D.S.W.* factors are typically applied to determine whether there is an actionable duty of care when there is no existing or

---

28. *Id.*

29. *Id.*

30. *Wongittilin,* 36 P.3d at 681 (stating nature and extent of duty are questions of law).

31. *Karen L.,* 953 P.2d at 874.

32. *Chizmar v. Mackie,* 896 P.2d 196, 203 (Alaska 1995).

33. *Hawks v. State, Dep't of Public Safety,* 908 P.2d 1013, 1016 (Alaska 1995).

34. *Karen L.,* 953 P.2d at 874–78.

35. *Id.* at 873.

36. *Id.* at 876 n. 10.

37. *Silvers v. Silvers,* 999 P.2d 786, 793 (Alaska 2000) (stating that "[a]s with any negligence case, the plaintiff must establish (1) a duty of care; (2) breach of the duty; (3) causation; and (4) harm").

intended relationship between the actor and the person harmed.[38]

We conclude that the *D.S.W.* multi-factor duty analysis we applied in *Karen L.* does not apply to intentional tort claims.

*Karen L.*'s duty discussion therefore does not preclude the McGrews' IIED claim. Because that claim was dismissed on the pleadings under Rule 12(b)(6), there was no opportunity to consider whether plaintiffs' evidence could surmount the thresholds for the severity of any emotional distress and the outrageousness of the actor's conduct.[39] We therefore cannot affirm the dismissal of this claim on a possible alternative theory that the McGrews did not or cannot overcome the threshold for an IIED claim. We consequently reverse the dismissal of their IIED claim.

### E. Other Issues

The parties' briefs do not discuss whether our decision in the adoption case, *L.E.K.M.*, has any effect on the McGrews' tort claims.[40] We leave it to the parties to raise on remand any question about what effect *L.E.K.M.* may have on the IIED claim, particularly with respect to the issues of liability, causation, and damages.

Our rulings on the negligence and IIED claims and the *Bivens*-type remedy make it unnecessary to consider the McGrews' argument that the superior court erred when it denied their motion to supplement the record. Their negligence claim and *Bivens* action are precluded as a matter of law and were therefore properly dismissed on the pleadings. No factual disputes, however genuine, would be material to those claims. And because we reverse the dismissal of the IIED claim, the McGrews are free on remand to offer evidence relevant to that claim.

The McGrews assert that the state is not immune from suit under the Alaska Tort Claims Act, AS 09.50.250. The state does not address the issue of statutory immunity. As to the negligence claim and the *Bivens*-remedy claim, no discussion of immunity is needed here. And because the parties have altogether failed to explain what effect AS 09.50.250, particularly subsection .250(3), might have on the IIED claim, we decline to consider whether the state is immune from the IIED claim pleaded here.[41]

## IV. CONCLUSION

We AFFIRM the dismissal of the McGrews' negligence and constitutional violation claims. We REVERSE the dismissal of their IIED claim and REMAND for further proceedings.

BRYNER, Chief Justice, and MATTHEWS, Justice, not participating.

---

38. The prototypical Alaska case was *Transamerica Title Insurance v. Ramsey*, 507 P.2d 492 (Alaska 1973). We there followed *Howarth v. Pfeifer*, 443 P.2d 39 (Alaska 1968), in which we adopted the test applied by the California Supreme Court in *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685, 687 (1961): *State v. Sandsness*, 72 P.3d 299 (Alaska 2003), is typical of our modern cases. There was no relevant preexisting relationship between the state and the decedent, a taxicab driver shot by a state juvenile releasee. *Id.* at 300, 305.

39. *Lincoln,* 30 P.3d at 589.

40. *In re Adoption of L.E.K.M.,* 70 P.3d 1097 (Alaska 2003).

41. AS 09.50.250 provides in part: "[A]n action may not be brought if the claim ... (3) arises out of ... misrepresentation, [or] deceit...."