*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ARLENE DIANE TRIPP and JACK TRIPP, | ) ) ) | Supreme Court No. S-18786 |
| Appellants, | ) ) | Superior Court No. 1JU-21-00725 CI |
| v. | ) ) | O P I N I O N |
| CITY AND BOROUGH OF JUNEAU, DEREK BOS, and JUNEAU POLICE DEPARTMENT, | ) ) ) ) | No. 7739 – January 17, 2025 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Marianna C. Carpeneti, Judge.

Appearances: James F. Clark, Law Office of James F. Clark, Juneau, for Appellants. Adam Gottschalk, Gregory S. Fisher, Littler Mendelson, P.C., Anchorage, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

## I. INTRODUCTION

Does a public employer have a duty to train employees against excessive alcohol consumption outside of work hours, so that the employer may be liable for negligent training if an off-duty employee drives drunk in a personal vehicle and injures

another person? We conclude there is no such duty, and therefore no such liability for the employer.

In this case people injured by an off-duty police officer driving under the influence in his personal vehicle sued the police department and city. The plaintiffs alleged that the police department failed to adequately train the officer against excessive alcohol consumption. The superior court held that the police department did not owe a duty of care to protect members of the public from harm caused by officers' off-duty alcohol consumption. Therefore, the court reasoned, the department could not be held liable for the officer's conduct. The court dismissed the lawsuit.

We affirm the superior court's decision. Neither statutes nor precedent impose a duty of care on the police department to protect the public from harms caused by officers' off-duty alcohol consumption. And public policy does not favor imposing such a duty. It is not foreseeable that training officers to avoid excess alcohol consumption will reduce the likelihood that they drive under the influence while off duty. Police officers are already well aware that doing so is illegal and has grave consequences for both themselves and others. Because the department did not have the duty of care the plaintiffs claim, it could not be held liable for injuries caused by its officer. Therefore it was not error to dismiss the lawsuit.

## II. FACTS AND PROCEEDINGS

### A. Facts

In July 2019 Brent Bartlett was a police officer with the Juneau Police Department (JPD).[1] He lived with and was in a relationship with another JPD officer,

---

[1] The case involves an appeal from a grant of a motion to dismiss for failure to state a claim under Alaska Civil Rule 12(b)(6). We therefore accept the allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Est. of Mickelsen ex rel. Mickelsen v. N.-Wend Foods, Inc.*, 274 P.3d 1193, 1197 (Alaska 2012).

Hannah Malone, at the time. Bartlett struggled with alcohol abuse and post-traumatic stress disorder (PTSD) due to past military service.

In July 2019 Bartlett was driving his personal vehicle on North Douglas Highway when he rear-ended Arlene Tripp's vehicle, injuring her. Bartlett was off duty at the time. He took a breath test after the accident, which indicated that his blood alcohol content was 0.239, roughly three times the legal limit for driving. The State charged Bartlett with driving under the influence and assault. Bartlett pled guilty.

Malone was aware that Bartlett struggled with PTSD and alcohol use disorder and that Bartlett regularly drove his vehicle after drinking heavily. But Malone did not report Bartlett's conduct to JPD. JPD was not aware of Bartlett's mental health difficulties or behavior involving alcohol before the accident.

JPD requires its officers to abide by rules of conduct. Rule of Conduct 114 prohibits off-duty officers from becoming intoxicated "to the point of obnoxious or offensive behavior which discredits them or the Department, or renders the members unfit to report for their next regular tour of duty." The City and Borough of Juneau (CBJ) also has a "Drug-Free Workplace" policy, which provides that "[t]he City and Borough shall train its employees and supervisors in alcohol and drug abuse problems and the effects of drug use in the work environment." The policy makes clear that "use of alcohol or controlled substances in the workplace or reporting for work under the influence of alcohol or controlled substances will not be tolerated."

## B. Proceedings

In July 2021 Tripp and her husband[2] filed suit against CBJ, JPD, and the chief of JPD, seeking a declaratory judgment and damages for injuries resulting from

---

[2] Arlene's husband's involvement in the lawsuit is based on loss of consortium due to Arlene's injuries.

JPD's "negligent hiring, training, and supervision of" Bartlett.[3] The Tripps later amended their complaint to exclude the negligent hiring claim.

The Tripps' amended complaint alleged that JPD had a duty to provide Bartlett professional counseling and to train Bartlett to manage his alcohol use disorder. They argued that JPD failed to fulfill this duty and that, but for this failure, the Tripps would not have been injured. They further alleged that JPD sought "to control the volume of intoxicating beverages that Bartlett could consume while off duty as a condition of his employment" by instituting Conduct Rule 114. By doing so, the Tripps maintained, JPD assumed "a duty to reasonably supervise Bartlett's activities to prevent his alcohol use disorder from posing a danger of harm to the Juneau driving public, including Plaintiff Arlene Tripp." Lastly, the Tripps alleged that JPD had a duty to train Malone that she was required to report a fellow officer's violation of the conduct rules.

In December 2021 JPD moved to dismiss the case on the basis that none of the defendants were legally responsible for the Tripps' injuries. JPD argued it had no duty to provide Bartlett with counseling, train him not to drink and drive, or supervise him while he was off duty.

The superior court requested supplemental briefing. It observed that whether JPD owed a duty of care to the Tripps was a key question, but neither party had applied the proper framework for determining whether a duty exists under a given set of circumstances.[4] The court also observed that the Tripps had not claimed that JPD was vicariously liable for Bartlett's tortious conduct. Instead they asserted JPD's direct

---

**3** JPD is an agency of CBJ. *See* City and Borough of Juneau Code 3.10.010 (1970). We refer to the appellees collectively as JPD. We refer to CBJ when addressing issues pertaining to it specifically, such as the Drug-Free Workplace policy.

**4** *See Mickelsen*, 274 P.3d at 1199 (explaining three-step process for determining if duty of care exists: (1) determining if statute imposes duty, (2) determining if existing precedent imposes duty, and (3) weighing public policy considerations).

liability for negligent training and supervision. The court noted that the focus of the parties' briefing — whether Bartlett had been acting within the scope of his employment at the time of the accident — may not be the crux of the Tripps' direct liability claims. To clarify these issues, the court requested briefing from the parties regarding whether JPD owed the Tripps a duty of care and how the scope-of-employment inquiry related to JPD's potential liability.

JPD reiterated its position that it did not owe the Tripps a duty of care and argued that the scope-of-employment inquiry was critical to the question of liability. JPD argued that because Bartlett was not driving a police vehicle and was not on police premises when he struck Arlene, JPD could not be liable for Bartlett's tortious conduct unless he had been acting within the scope of his employment when the accident occurred. The Tripps maintained that JPD did owe them a duty of care, that Bartlett could have been acting within the scope of his employment at the time of the crash, and that JPD was improperly litigating the case as a question of vicarious liability, rather than direct liability.

The superior court granted JPD's motion to dismiss. The court determined that JPD did not owe a duty of care to the Tripps under the circumstances, so the Tripps could not prove a set of facts in support of their claim that would entitle them to relief.[5]

The superior court first ruled that JPD owed no statutory duty to the Tripps. The Tripps had argued that AS 18.65.130, a policy provision related to the Alaska Police Standards Council, imposed a statutory duty on JPD to provide Bartlett with adequate training on alcohol use. This duty, the Tripps argued, was reinforced by the Drug-Free Workplace policy's "mandatory training requirement" and Conduct Rule

---

[5]     *See Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 286-87 (Alaska 2008) ("[A] complaint can be dismissed under Rule 12(b)(6) only where it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief.").

114.[6]  The superior court noted that, although "AS 18.65.130 includes broad policy language that emphasizes the importance of police training, it does not direct . . . police departments to take any particular action."  The court concluded that the Drug-Free Workplace policy and Conduct Rule 114 did not "create an actionable tort duty to members of the public driving on public roads, especially where the officer whose underlying conduct forms the basis for [JPD's] liability was off duty and driving his personal vehicle."

The superior court next concluded that the case was not controlled by precedent.  The Tripps had argued that JPD, by requiring training concerning substance abuse problems and adopting Conduct Rule 114, had "assumed a duty of care to the public to train and supervise its officers in a non-negligent manner."  But the court determined that the cases the Tripps cited to support their argument were distinguishable.  The court reasoned that those cases involved political subdivisions that had voluntarily rendered services to the plaintiffs, whereas JPD's adoption of personnel rules did not amount to rendering a "service" to members of the general public like the Tripps.[7]

Finally, the superior court looked to the factors described in *D.S.W. v. Fairbanks North Star Borough School District* to determine whether public policy favors recognizing a duty of care under the circumstances.[8]  The superior court concluded that these factors weighed against recognizing the duty the Tripps advocated for.  The court noted that future harm from negligent training and supervision might be

---

**6**      The Drug-Free Workplace policy was not included in the Tripps' pleadings, but the superior court took judicial notice of the policy's existence in its order.  Neither party challenged this exercise of judicial notice.

**7**      *See Williams v. Mun. of Anchorage*, 633 P.2d 248, 251 (Alaska 1981) (reasoning that facts could permit finding that municipality undertook to render a service); *State, Dep't of Transp. v. Miller*, 145 P.3d 521, 533 (Alaska 2006).

**8**      628 P.2d 554, 555-56 (Alaska 1981).

reduced somewhat if a duty were imposed. But because of "the lack of foreseeability and the distant connection between [JPD's] conduct and the harm caused, the effect of imposing a duty would likely be limited."

The Tripps appeal the superior court's order dismissing their lawsuit.

## III. STANDARD OF REVIEW

We review a dismissal under Civil Rule 12(b)(6) de novo, "presuming all factual allegations of the complaint to be true and making all reasonable inferences in favor of the non-moving party."[9] To survive a motion to dismiss, a complaint need only "set forth allegations of fact consistent with and appropriate to some enforceable cause of action."[10] "We will affirm dismissal only if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[11]

"The existence and extent of a duty of care are questions of law which we decide de novo, using our independent judgment to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[12]

## IV. DISCUSSION

This case requires us to determine whether JPD had a duty to train its officers against excessive off-duty alcohol consumption, and if so, to whom it owed that duty. "[B]efore a defendant can be held liable for negligence, it must be established that the defendant owed a duty of care to the plaintiff."[13] "The existence of a duty turns

---

[9]     *Mickelsen*, 274 P.3d at 1197.

[10]     *Id.* (quoting *J & S Servs., Inc. v. Tomter*, 139 P.3d 544, 547 (Alaska 2006)).

[11]     *Id.*

[12]     *Id.*

[13]     *Id.* at 1198.

not on the particularized facts of a given case, but rather on the 'basic nature of the relationship between the parties to the cause of action.' "[14]

We use a three-step process to determine whether a duty exists.[15] First, we determine whether a duty is imposed by statute.[16] If not, we consider whether "the current case falls in the class of cases controlled by existing precedent."[17] Third, "[i]f no closely related case law exists, we weigh the public policy considerations enumerated in *D.S.W. v. Fairbanks North Star Borough School District*."[18]

### A. No Statute Imposes A Duty Of Care On JPD To Train Employees Against Excessive Off-Duty Alcohol Consumption Or To Report Colleagues Who Engage In Such Conduct.

We first consider whether statutes imposed a duty of care on JPD to train police officers not to consume excessive amounts of alcohol while off duty. The Tripps point to three sources for this duty: (1) AS 18.65.130, a provision setting out general policies for the Police Standards Council; (2) CBJ's Drug-Free Workplace policy; and (3) JPD Rule of Conduct 114. The Tripps argue that a "holistic" reading of the statute and rules they cite establishes this duty. We disagree. None of these provisions,

---

**14** *Id.* at 1199 (quoting *P.G. v. State, Dep't of Health & Hum. Servs., Div. of Fam. & Youth Servs.*, 4 P.3d 326, 331 (Alaska 2000)); *see also* RESTATEMENT (SECOND) OF TORTS § 315 (AM. L. INST. 1965) ("There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.").

**15** *Mickelsen*, 274 P.3d at 1199.

**16** *Id.*

**17** *Id.*

**18** *Id.* (citing 628 P.2d 554, 555 (Alaska 1981)).

whether read individually or together, evince an intent to impose a duty on JPD to protect the public by training officers not to consume alcohol to excess while off duty.[19]

### 1. Alaska Statute 18.65.130 does not impose on JPD an actionable tort duty to the public.

The superior court rejected the Tripps' argument that AS 18.65.130, which establishes the policy of the Police Standards Council,[20] imposed a duty of care on JPD to train officers against excessive off-duty alcohol consumption. The Tripps acknowledge that AS 18.65.130 does not explicitly direct JPD to take any particular action, but argue that all police officers are subject to its statutory training "requirement[s]." They argue that it is therefore reasonable to conclude that CBJ's Drug-Free Workplace policy and Conduct Rule 114 "implement the public policy

---

[19]     We question whether the Drug-Free Workplace policy or the conduct rules count as "statutes" for purposes of the *Mickelsen* analysis. These policies are internal personnel rules, not enacted legislation. But we need not decide this question because these sources do not impose the duty the Tripps claim.

[20]     AS 18.65.130 provides:

> The administration of criminal justice affects the health, safety, and welfare of the people of this state and requires education and training of a professional quality. It is a primary public interest that applicants meet minimum standards for employment as police officers, probation and parole officers, and correctional officers, and that criminal justice education and training be made available to police officers, probation and parole officers, and correctional officers serving in a probationary capacity and police officers, probation and parole officers, and correctional officers already in regular service. It is of secondary public interest to encourage the establishment of preliminary training programs for persons seeking to become police officers, probation and parole officers, and correctional officers. Application of standards for employment and making education and training available for municipal correctional officers is also in the public interest.

directive of AS 18.65.130 to educate and train officers for 'the health, safety, and welfare of the people of this state.' " Reading AS 18.65.130 together with the workplace policy and conduct rule, the Tripps argue that the statute imposes a duty on JPD to provide police officers with specific types of training to protect the public, including training to avoid consuming alcohol to excess while off duty. We do not find this argument persuasive.

The Police Standards Council exists within the State's Department of Public Safety and is made up of law enforcement officials and members of the public.[21] Its mission includes setting employment standards for peace officers, establishing training programs for them, and revoking the certificates of peace officers who violate the Council's standards (which precludes their further employment in the field).[22]

Nothing in the text of the statutes governing the Council imposes a duty on JPD to train officers against excessive off-duty alcohol consumption. The provision the Tripps rely on, AS 18.65.130, is the Council's general statement of policy, which states that "[i]t is a primary public interest that applicants meet minimum standards for employment as" peace officers and that "[t]he administration of criminal justice affects the health, safety, and welfare of the people of this state and requires education and training of a professional quality." Other statutes governing the Council, which the Tripps do not discuss, set forth in more detail the Council's role in training police

---

[21] AS 18.65.140 (creating council); AS 18.65.150 (providing for council's composition).

[22] *See* AS 18.65.150 (detailing composition of council); AS 18.65.220 (detailing powers of council); AS 18.65.230(a) (requiring council to establish and maintain police training programs); AS 18.65.240(c) (giving council power to revoke police officer's certificate for not meeting standards).

officers.[23]  None of these statutes impose duties on any entities besides the Council. Nor do they impose a duty to train peace officers on the specific topic with which the Tripps are concerned.  The only specific topics of training mentioned in these statutes have to do with interacting with persons with disabilities,[24] domestic violence, and sexual assault.[25]

We have previously rejected the argument that broad policy language like that in AS 18.65.130 establishes a duty of care to protect the public in specific ways. In *Wongittilin v. State*, the personal representative of a child killed by a drunk driver argued that troopers were negligent in failing to arrest the driver on an outstanding warrant.[26]  To support the argument that the troopers had a duty to execute the arrest warrant, the plaintiff relied on AS 18.65.090, which provides that the "Department of Public Safety shall assist other departments of the state, municipal, and federal governments in the enforcement of criminal laws and regulations pertaining to those departments."[27]  We rejected this argument.  We observed that a different statute gave troopers discretion whether to execute a warrant.[28]  As for AS 18.65.090, we reasoned that it "impose[d] a duty on the police to assist other governmental departments but not

---

**23**  *See, e.g.,* AS 18.65.220(3) (giving the Council power to establish "minimum criminal justice curriculum requirements" for training peace officers); AS 18.65.230(a) (requiring the Council to establish and maintain peace officer training programs "through those agencies and institutions the council considers appropriate"); AS 18.65.240(a) (requiring peace officer to complete program of basic training that includes instruction on domestic violence and sexual assault).

**24**  AS 18.65.220(3).

**25**  AS 18.65.240(a).

**26**  36 P.3d 678, 680p (Alaska 2001).

**27**  *Id.* at  681 n.11 (citing AS 18.65.090).

**28**  *Id.* at 681-82.

a general duty to protect the public," and therefore no duty to arrest on an outstanding warrant.[29]

In the same vein, AS 18.65.130's general policy for the Council to ensure peace officers have sufficient training does not impose on individual law enforcement agencies a "general duty to protect the public" by training officers on particular topics, such as off-duty alcohol consumption.  Even if an actionable duty of care to provide training could be discerned in these statutes, it would apply only to the Council.

We therefore conclude that AS 18.65.130, by itself, does not impose a statutory duty of care to the public on JPD.

### 2. Neither CBJ's Drug-Free Workplace policy nor JPD Conduct Rule 114 impose on JPD a duty of care to protect the public.

The Tripps argue that CBJ's Drug-Free Workplace policy and JPD Conduct Rule 114, taken together, manifest a duty of care to the public that implements AS 18.65.130's broad policy directive.  To the extent the Drug-Free Workplace policy and Conduct Rule 114 impose actionable duties on JPD at all, they are limited duties that do not extend to the general public in the way the Tripps suggest.

CBJ's Drug-Free Workplace policy prohibits certain conduct by city employees and provides that the "City and Borough is strongly committed to assisting employees in finding resources for drug and alcohol abuse treatment, counseling and rehabilitation."  The policy includes the following provision:

> The City and Borough shall train its employees and supervisors in alcohol and drug abuse problems and the effects of drug use in the work environment.  However, the use of alcohol or controlled substances in the workplace or reporting for work under the influence of alcohol or controlled substances will not be tolerated.

JPD Conduct Rule 114 requires officers to refrain from consuming alcohol while off duty "to the extent that it results in intoxication to the point of obnoxious or

---

[29]     *Id.*

- 12 -                                                          **7739**

offensive behavior which discredits them or the Department or renders the members unfit to report for their next regular tour of duty." The Tripps argued to the superior court that Conduct Rule 114 expands the scope of the Drug-Free Workplace policy to apply to off-duty conduct. They maintain that the "work environment" extends to officers' off-duty encounters with the public, so Bartlett was not "off duty" when the accident occurred, but merely "off shift."

The "work environment" referred to in the Drug-Free Workplace policy cannot be reasonably interpreted to include an off-duty police officer driving on a public road in his personal vehicle, even when read in light of Conduct Rule 114. Although the Tripps do not explicitly frame this as a scope of employment question on appeal, their argument is in essence that whenever Bartlett was out in public, he was acting within the scope of his employment. We disagree.[30]

When determining whether an employee's tortious conduct falls within the scope of his or her employment, we sometimes refer to the Restatement of Agency.[31] Section 228 of the Restatement (Second) of Agency provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>   (a) it is of the kind he is employed to perform;
>   (b) it occurs substantially within the authorized time and space limits;

---

[30] Whether Bartlett was acting within the scope of his employment when he injured Arlene Tripp is not dispositive because the Tripps seek to hold JPD directly liable — rather than vicariously liable — for negligently training and supervising Bartlett. *See Lane v. City & Borough of Juneau*, 421 P.3d 83, 93-94 (Alaska 2018) (analyzing negligent supervision and vicarious liability claims separately and explaining that employer is *vicariously* liable for employee's tort only when employee is acting within scope of employment). But analyzing the issue through this lens is useful for resolving whether Conduct Rule 114 modified the Drug-Free Workplace policy in the manner the Tripps propose.

[31] *See Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 349 (Alaska 1982).

> > (c) it is actuated, at least in part, by a purpose to serve the master; and
> >
> > (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> >
> > (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.[32]

Bartlett's conduct did not fall within the scope of his employment. Police officers move about in public as part of their employment.[33] But they are not always working, and when not working they are outside the "time limits" of their employment. And an off-duty police officer driving his own vehicle is generally not doing so for the benefit of his or her employer. Accordingly, the "work environment" described in the Drug-Free Workplace policy does not extend to off-shift, off-premises activity.

When the extent of a police officer's "work environment" is properly defined, the purpose of the Drug-Free Workplace policy can be discerned. The purpose of the policy is to protect other employees and members of the public interacting with officers in their professional capacity. It is not to protect members of the general public who may encounter off-duty officers living their private lives.

Conduct Rule 114 is not for the purpose of protecting the general public either, contrary to what the Tripps argue. The rule identifies the harms that result from officers drinking to excess while off duty: discrediting officers "or the Department, or render[ing] the [officers] unfit to report for their next regular tour of duty." This description of consequences the rule is designed to prevent shows who and what the rule is meant to protect — JPD's reputation within the community, and those who rely

---

**32**    RESTATEMENT (SECOND) OF AGENCY § 228 (AM. L. INST. 1958).

**33**    *See, e.g.*, JPD REGULATIONS OPERATIONS MANUAL ch. 4.000 (2018), https://public.powerdms.com/JUNEAUAK/tree/documents/751524 (detailing patrol functions of JPD officers).

on the work that police officers do. The conduct rule does not reflect an intent to create a general duty to protect members of the public from harms that off-duty officers might cause due to intoxication. As our decision in *Wongittilin* shows, a limited statutory duty to a specific class of people does not establish a generalized duty to protect the public.[34]

For these reasons we conclude that the Drug-Free Workplace policy and Conduct Rule 114, whether considered individually or together, impose no duty on JPD to protect the general public from harms resulting from officers' excessive consumption of alcohol while off duty.

### 3. JPD did not have a statutory duty to train Officer Malone to report Bartlett's conduct.

The Tripps argue that JPD had a duty to train Bartlett's romantic partner at the time of the accident, fellow JPD officer Hannah Malone, to report Bartlett's conduct. But the Tripps do not identify a specific statute, conduct rule, or policy requiring officers to report their colleagues' excessive off-duty consumption of alcohol. And given our conclusion that no statute imposes a duty on JPD to train officers against excessive off-duty alcohol consumption, we see no statutory basis for imposing a duty on JPD to train other officers to report their colleagues for violating personnel rules related to alcohol consumption.

### B. Precedent Does Not Establish A Duty Of Care To The Public Under These Circumstances.

If no statute imposes a duty of care, we then determine "if the current case falls in the class of cases controlled by existing precedent."[35] The Tripps argue that a class of cases involving voluntary assumption of a duty controls their case.

---

[34]     *See Wongittilin v. State*, 36 P.3d 678, 682 n.16 (Alaska 2001).

[35]     *Est. of Mickelsen ex rel. Mickelsen v. N.-Wend Foods, Inc.*, 274 P.3d 1193, 1199 (Alaska 2012).

"It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully . . . ."[36] In *Williams v. Municipality of Anchorage*, an employee of the Port of Anchorage lent a tug boat crew a ladder in order to access the dock.[37] The ladder collapsed the next day, causing a crewmember to fall and sustain serious injury.[38] The crewmember sued the Municipality on strict liability and negligence theories.[39] On appeal we concluded that the Municipality was not obligated to provide the crewmember with the ladder, but "having undertaken to provide a ladder, it was under a duty to exercise some degree of care for the safety of those using the same."[40] Similarly, in *State, Department of Transportation v. Miller*, we concluded that the State owed a pilot a duty of care when it voluntarily installed windsocks at an airstrip but failed to warn pilots when they fell into disrepair.[41] No law obligated the State to install the windsocks.[42] But by doing so voluntarily "and inducing pilots to rely on them for safety, the State undertook a duty to maintain the windsocks, or warn if they were malfunctioning."[43]

The Tripps analogize JPD's implementation of Conduct Rule 114 to the ladder in *Williams* and windsocks in *Miller*. They argue that by "gratuitously making Rule 114 a condition of employment," JPD assumed a duty to ensure that officers did not drink to excess while off duty.

---

[36]    *Williams v. Mun. of Anchorage*, 633 P.2d 248, 251 (Alaska 1981) (alterations in original) (quoting *Adams v. State*, 555 P.2d 235, 240 (Alaska 1976)).

[37]    *Id.* at 249-50.

[38]    *Id.* at 250.

[39]    *Id.*

[40]    *Id.* at 251.

[41]    145 P.3d 521, 523-24, 533 (Alaska 2006).

[42]    *Id.* at 533.

[43]    *Id.*

But this case is different. Unlike the political subdivisions in *Williams* and *Miller*, JPD did not "under[take] to render a 'service' " to the Tripps or the general public when it adopted conduct rules for its police officers.[44] Implementing a personnel policy is not the same as providing a necessary tool or safety device to a third party. JPD's implementation of the Drug-Free Workplace policy and Conduct Rule 114 did not induce members of the general public like the Tripps to rely on JPD to protect them from intoxicated off-duty police officers driving on public roads. In both *Williams* and *Miller* we emphasized that a duty of care to the plaintiffs arose only after the defendants provided them with some sort of aid, thereby inducing them "to rely on them for safety."[45] In contrast, it is not plausible that the Tripps relied on JPD's enforcement of its personnel rules to keep them safe while driving. These rules are internal policies of which the general public would have no reason to be aware.

The Tripps cite to *City of Seward v. Afognak Logging*[46] in arguing that even if the defendant's action or inaction is not a "service" to the plaintiff, it still must be performed without negligence. In that case a logging company had contracted with the city to provide heavy equipment services.[47] It sued the city in tort after one of its bulldozers was damaged by floodwaters while under the direction of city personnel.[48] The city employee had been at the scene of the flood for some time "and specifically requested [the contractor] to operate his bulldozer in the area . . ., where [the city employee] knew or should have known the pavement had been washed away."[49] We affirmed the superior court's ruling that the city had a duty to warn the contractor that

---

[44]     *Williams*, 633 P.3d at 251.

[45]     *Miller*, 145 P.3d at 533; *see Williams*, 633 P.3d at 251.

[46]     31 P.3d 780 (Alaska 2001).

[47]     *See id.* at 782.

[48]     *See id.* at 781-82.

[49]     *Id.* at 784.

road conditions were hazardous, emphasizing that we have "long recognized that a duty of reasonable care generally arises when a person undertakes an action," even if the person was under no obligation to act in the first place.[50]

The Tripps place too much emphasis on the fact that we did not use the term "service" to refer to the city's voluntary undertaking in *Afognak Logging*. One of the sources of the "long[-]recognized" duty in *Afognak Logging* is section 324A of the Restatement (Second) of Torts, which provides that liability attaches when one voluntarily undertakes "to render services to another which he should recognize as necessary *for the protection of a third person*."[51]  Like *Williams* and *Miller*, *Afognak Logging* demonstrates that when one party acts in a way that induces another to depend on the actor for safety, the actor has a duty to act with reasonable care.  But as explained above, a government agency's adoption of a Drug-Free Workplace policy and an employee conduct rule against embarrassing levels of intoxication does not induce the general public to rely on these rules for its safety.[52]

---

[50]     *Id.* at 784-85.

[51]     RESTATEMENT (SECOND) OF TORTS § 324A (AM. L. INST. 1965) (emphasis added).  In *Afognak Logging* we cited to *Moloso v. State*, quoting *Hammond v. Bechtel Inc.*, as support for the assertion that we have long recognized the concept of voluntary assumption of duty.  *Afognak Logging*, 31 P.3d at 784 n.11 (quoting *Moloso v. State*, 644 P.2d 205, 212 (Alaska 1982)).  In *Hammond* we cited section 324A of the Restatement (Second) as a source of this duty.  *See Hammond v. Bechtel, Inc.*, 606 P.2d 1269, 1277 n.15 (Alaska 1980).

[52]     The Tripps also argue that the superior court's reliance on the Restatement requires us to reverse its decision because the court must take all allegations in the complaint as true and provable for purposes of a motion to dismiss.  But the existence and extent of a duty of care are questions of law.  *Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013).  The superior court properly relied on the Restatement and cases applying its rules.

We conclude that the superior court correctly determined that precedent does not impose a duty of care to train employees against excessive off-duty alcohol consumption.

### C. Public Policy Does Not Support A Duty Of Care Under These Circumstances.

When there is no statutory or common law duty of care, we consider whether public policy supports a duty of care in the circumstances.[53] To do so we apply the factors described in *D.S.W. v. Fairbanks North Star Borough School District*:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.[54]

We conclude that the foreseeability, closeness of connection, moral blame, the policy of preventing future harm, and the burden-versus-consequences factors weigh against recognizing a duty. The only factor that weighs in favor of recognizing a duty of care is the certainty-of-injury factor. And the parties agree that the availability of insurance for the risks at issue is unknown, so this factor does not weigh in favor of or against recognizing a duty. On balance, the *D.S.W.* factors do not support a duty of care in this instance.[55]

---

[53]     *Est. of Mickelsen ex rel. Mickelsen v. N-Wend Foods, Inc.*, 274 P.3d 1193, 1199 (Alaska 2012).

[54]     628 P.2d 554, 555 (Alaska 1981) (quoting *Peter W. v. S.F. Unified Sch. Dist.*, 131 Cal. Rptr. 854, 859-60 (Cal. App. 1976)).

[55]     The Tripps argue that if AS 18.65.130 is a "broad policy directive" emphasizing the importance of police training, then the superior court erred "by failing

### 1.	Foreseeability

The single most important criterion in determining whether to impose a duty of care upon a particular defendant is foreseeability.[56]  "The general rule of negligence law is that a defendant owes a duty of care 'to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.' "[57]  "[T]here can be no duty where the harm is unforeseeable, but foreseeability alone is insufficient to establish a duty if the burden of taking care or the effect on society is too harsh."[58]  The superior court reasoned that it was not foreseeable that JPD's failure to train its officers against excessive consumption of alcohol while off duty would lead a JPD employee to drive drunk.

We agree with the superior court's conclusion.  Training police officers on the dangers of excessive alcohol consumption is unlikely to affect whether officers drive drunk while off duty.  Officers are well aware that this conduct is illegal and carries grave consequences.[59]  Police officers are trained to enforce the law and are

---

to analyze and weigh the failure to observe that policy along with the other *D.S.W.* factors in the third of the three-step process set out in *Mickelsen*."  The general public interest in well-trained police officers that is articulated in AS 18.65.130 has no bearing on whether public policy favors a duty to train in the specific circumstances of this case.

**56**	*Div. of Corr., Dep't of Health & Soc. Servs. v. Neakok*, 721 P.2d 1121, 1125 (Alaska 1986), *overruled on other grounds by State, Dep't of Corr. v. Cowles*, 151 P.3d 353 (Alaska 2006).

**57**	*Id.* at 1125-26 (quoting *Rodriguez v. Bethlehem Steel Corp.*, 525 P.2d 669, 680 (Cal. 1974)).

**58**	*Hurn v. Greenway*, 293 P.3d 480, 487 (Alaska 2013) (citing *P.G. v. State, Dep't of Health & Hum. Servs., Div. of Fam. & Youth Servs.*, 4 P.3d 326, 333 (Alaska 2000); *Neakok*, 721 P.2d at 1127; *State v. Guinn*, 555 P.2d 530, 536 (Alaska 1976); *Kooly v. State*, 958 P.2d 1106, 1108 (Alaska 1998); *Schumacher v. City & Borough of Yakutat*, 946 P.2d 1255, 1257 (Alaska 1997); *Trapp v. State, Off. of Pub. Advoc.*, 112 P.3d 668, 675 (Alaska 2005)).

**59**	*See* AS 28.35.030; AS 11.41.220(a)(1)(B).

therefore expected to know what the law is.[60]  It is not foreseeable that a lack of training on excessive alcohol consumption will make officers more likely to drive drunk.

The Tripps challenge this conclusion, but we are not persuaded.  First, they maintain that the court should have considered that JPD failed to conduct a background check on Bartlett before hiring him, which prevented it from knowing whether Bartlett could comply with Conduct Rule 114.  But whether JPD conducted a background check on Bartlett is irrelevant because the Tripps abandoned the negligent hiring claim.

Second, they argue that if it were not foreseeable that an off-duty officer might drive while under the influence, then Conduct Rule 114 would serve no purpose.  But the conduct rule can serve the purpose of being a basis for discipline even if JPD never trains officers on how to comply with its straightforward mandate.

Third, the Tripps assert that the court should have considered that JPD failed to train Malone on a duty to report Bartlett's conduct.  The superior court did not address whether failure to train Malone to report Bartlett made it more foreseeable that Bartlett would drive drunk.  But Malone, a police officer like Bartlett, would have known that Bartlett's conduct was against the law.  Officers may fail to report their colleagues' conduct for a variety of reasons, including the desire to protect each other from consequences.  This interpersonal dynamic makes it doubtful that training would compel such an officer to report the fellow officer's improper conduct.

In sum, the lack of training about excessive alcohol consumption did not make it foreseeable that Bartlett would injure Tripp while driving under the influence.

---

[60]  *See City of Nome v. Ailak*, 570 P.2d 162, 172 (Alaska 1977) ("The law does not expect police officers to be sophisticated constitutional or criminal lawyers, but because they are charged with the responsibility of enforcing the law, it is not unreasonable to expect them to have some knowledge of it." (quoting *Glasson v. City of Louisville*, 518 F.2d 899, 910 (6th Cir. 1975), *overruled on other grounds by Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 252 (6th Cir. 2015))).

This factor therefore weighs against recognizing a duty of care under these circumstances.

## 2. Certainty of injury

The parties do not dispute that the superior court correctly determined the Tripps' injuries are presumed certain for the sake of JPD's motion to dismiss. We agree and conclude that this factor weighs in favor of recognizing a duty.

We adopted the *D.S.W.* factors from a California case in which a plaintiff with a reading disability alleged that he could not read or write as a result of a school district's negligent treatment of his disability.[61] The California court determined that there was "no reasonable 'degree of certainty that . . . plaintiff suffered injury' within the meaning of the law of negligence, and no such perceptible 'connection between the defendant's conduct and the injury suffered,' as alleged, which would establish a causal link between them within the same meaning."[62] The court reasoned that, "[u]nlike the activity of the highway or the marketplace, classroom methodology affords no readily acceptable standards of care, or cause, or injury," noting that a child's failure to achieve literacy could be attributable to any number of factors, including those unrelated to "the formal teaching process."[63] The court's reasoning suggests that the inquiry into certainty of injury turns on whether the injury alleged is one that can be reasonably ascertained and attributed to the allegedly tortious conduct using objective criteria.[64]

The Tripps' injuries meet this standard, unlike the plaintiff's injuries in the California case. The Tripps alleged that Arlene suffered physical and mental

---

[61] *See D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981) (discussing *Peter W. v. S. F. Unified Sch. Dist.*, 131 Cal. Rptr. 854, 859-61 (Cal. App. 1976)).

[62] *Peter W.*, 131 Cal. Rptr. at 861 (citation omitted) (quoting *Rowland v. Christian*, 443 P.2d 561, 564 (Cal. 1968)).

[63] *Id.* at 860-61.

[64] *See id.*

injuries as a result of the crash and that her husband suffered loss of consortium and society, among other similar injuries, "all to the detriment of their marital relationship." Unlike the plaintiff's injuries in the California case, which could have been "influenced by a host of factors which affect the pupil subjectively,"[65] the Tripps' injuries can be defined, measured, and linked to Bartlett's unlawful conduct using objective criteria.

We conclude that this factor weighs in favor of recognizing a duty of care under these circumstances. But because of the remote connection between JPD's training and Bartlett's intoxicated driving, the persuasive force of this factor is limited.

### 3. Closeness of connection between JPD's conduct and the Tripps' injuries

The superior court determined that the connection between JPD's alleged failure to train and supervise Bartlett and the Tripps' injuries was too remote to impose a duty of care. The court found the connection "distant because the chain of causation involves multiple steps, including [JPD]'s failure to train and supervise, Officer Malone's failure to report Mr. Bartlett, [JPD]'s failure to exercise diligence in learning about Mr. Bartlett's conditions, Mr. Bartlett's own decision to drink to excess then operate a vehicle, and the collision itself." The Tripps argue that the superior court erred because correcting any of these failures could have prevented their injuries. We agree with the superior court that the causal connection between JPD's training and the Tripps' injuries is too remote to support a duty of care.

Under the "closeness of connection" factor we consider whether the allegedly tortious conduct at issue is sufficiently related to the injury alleged to support imposing a duty on the defendant.[66] In *Hawks v. State, Department of Public Safety*,

---

[65]     *Id.* at 861.

[66]     *See, e.g.*, *Bolieu v. Sisters of Providence in Wash.*, 953 P.2d 1233, 1233, 1237 (Alaska 1998) (examining whether manner in which plaintiffs — who were spouses of nursing assistants at defendant health care facility — became infected with

we weighed the *D.S.W.* factors to determine whether the State owed the mother of a murder victim a duty of care to more quickly identify the victim's remains.[67] We concluded that public policy weighed against imposing a duty, in part because the connection between the State's conduct and the mother's injury was too remote.[68] We determined that the mother's injury was "most closely connected" to the conduct of the daughter's killer, "not the State's handling of the investigation."[69]

The same logic applies here. Bartlett's decision to knowingly break the law was a substantial intervening factor causing the Tripps' injuries. Bartlett not only knew that operating his vehicle after drinking excessively was unlawful; he knew that doing so could have great repercussions. Yet he decided to drive with a blood alcohol content three times the legal limit. As in *Hawks*, the injuries in this case are "most closely connected" to an individual's criminal conduct. The superior court correctly observed that the causal connection between JPD's conduct and the Tripps' injuries is too attenuated to impose a duty of care on JPD in this instance.

### 4. Moral blame

The superior court ruled that although "the failure to train and supervise employees as it relates to alcohol use is less blameworthy than criminal conduct such as Mr. Bartlett's driving while intoxicated, . . . some moral blameworthiness certainly attaches to an employe[r]'s failure to train and supervise." The Tripps argue that the court erred by concluding that this factor counseled "slightly against imposing a duty" in light of its reasoning. We agree with the superior court that the relative moral blameworthiness in this case disfavors recognizing a duty.

---

staph infection was closely connected enough to defendant's conduct to support imposing duty of care).

[67]    908 P.2d 1013, 1014-1016 (Alaska 1995).

[68]    *Id.* at 1016-17.

[69]    *Id.* at 1016.

JPD's blameworthiness in this case is slight. Our cases involving voluntary assumption of duty provide a helpful analogy. Those cases show that when an actor induces others to rely on the actor for safety, the actor has a legal duty to act carefully.[70] This rule reflects a moral judgment that a person has a responsibility toward those induced to trust the person with their safety. But members of the public do not rely for their safety while driving on employers training employees not to drink and drive. Instead, society relies on civil and criminal penalties to discourage others from driving while under the influence.[71]

The moral blame in this case lies squarely with Bartlett. Therefore this factor weighs against recognizing a duty of care on JPD's part.

### 5. Policy of preventing future harm

The superior court determined that "[f]uture harm from negligent training and supervision would likely be curbed, at least to some extent, if a duty were imposed here," but given "the lack of foreseeability and the distant connection between [JPD]'s conduct and the harm caused," the effects of imposing such a duty would be limited.

The policy of preventing future harm weighs against a duty of care in these circumstances. The marginal public safety benefit of training officers not to consume alcohol to excess is likely to be scant because officers already know the dangers and consequences of driving while under the influence. More training is unlikely to meaningfully influence police officers' decision whether to drink and drive. We conclude that this factor does not support imposing a duty of care on JPD.

---

[70] *See Williams v. Mun. of Anchorage*, 633 P.2d 248, 251 (Alaska 1981); *State, Dep't of Transp. v. Miller*, 145 P.3d 521, 533 (Alaska 2006); *City of Seward v. Afognak Logging*, 31 P.3d 780, 784 (Alaska 2001).

[71] *See, e.g.*, AS 28.35.030; AS 11.41.220(a)(1)(B).

### 6. Burden on JPD and consequences for the community

The superior court determined that imposing a duty under these circumstances would be a significant burden on JPD because it would likely lead to substantial increases in litigation costs. The court reasoned that the class of parties to whom the duty would be owed is large "[b]ecause potential plaintiffs include anyone driving on a public road (or related to someone doing so)." And because it was uncertain that imposing a duty would lead to "better supervised and trained employees who are less likely to violate policies," the court concluded that this factor weighed against doing so.

The Tripps argue that the benefits of imposing a duty of care could justify the inconvenience. They assert that imposing a financial burden on JPD would likely lead to more intensive background checks and more personnel training on the conduct rules, which might afford the community "significant" protection. They also argue that the court erred because it cannot be true that the burden would be significant while the effects of the burden would be limited.

The Tripps' arguments are not persuasive. First, whether imposing a duty of care on employers to train against off-duty alcohol consumption would incentivize employers to perform more thorough background checks and therefore hire safer employees is entirely speculative. And even if this effect materialized, those people not hired by JPD or other employers would still be able to drink and drive while not working. It is not clear how imposing this duty would make the roads safer.

Finally, imposing on JPD the duty the Tripps advocate for could have unfavorable consequences for other employers and public policy more generally. There is no obvious reason why such a duty would be limited to police departments or municipalities. And the burden would not be limited to litigation costs. Imposing the duty the Tripps advocate for would incentivize employers to adopt intrusive and potentially draconian practices toward their employees. We decline to push employers down that road.

This factor weighs against recognizing the duty the Tripps advocate for.

### 7. Availability of insurance

The parties do not dispute that availability of insurance for the risks in question is unknown. Because we conclude that the other factors weigh against recognizing a duty in this case, we need not inquire further into the availability of insurance.

### D. The Superior Court Properly Dismissed The Tripps' Lawsuit.

Because the superior court correctly ruled that JPD did not owe the Tripps a duty of care, it did not err by dismissing their lawsuit.[72]

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the superior court.

---

[72] *See Est. of Mickelsen ex rel. Mickelsen v. N.-Wend Foods, Inc.*, 274 P.3d 1193, 1197 (Alaska 2012).